■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v WALTER TRATCH, Respondent. — Appeal by the People from an order of the Supreme Court, Queens County (Rotker, J.), dated April 20, 1982, which, after a hearing, granted defendant's motion to suppress physical evidence.

Order reversed, on the law and the facts, defendant's motion to suppress denied, and matter remitted to Criminal Term for further proceedings.

The evidence adduced at the suppression hearing was uncontradicted. On January 29, 1982, at about 7:45 A.M., a police officer on radio motor patrol duty received a radio run that there was a man with a gun at a luncheonette at Metropolitan Avenue and 116th Street, Queens County. The officer immediately proceeded to that busy location, where he observed several other police officers speaking with a "white female, grey-haired" pedestrian. The officer overheard the woman say that "a man was carrying a shopping bag walking on Metropolitan Avenue, that he had a gun". The officer noticed a "tall man in * * * blue coat and blue jeans" carrying a shopping bag who was walking in the vicinity. Upon inquiry, the woman told the officer that it was the man with the blue coat and blue jeans who had the gun. The officer thereupon jumped back into his radio car and followed the man. Shortly thereafter, the officer approached the man, the defendant herein, drew his revolver and called out "turn around, it is the police". After defendant turned around, the officer told the defendant to put the shopping bag down and raise his hands. The defendant complied with the officer's request. The officer then lifted the shopping bag, and from its weight, thought that "it contained a gun". He opened the shopping bag and observed a vinyl carrying case which was "designed to carry a revolver". The officer opened the case and found an unloaded "22 caliber long rifle". The officer then immediately searched the defendant and found a loaded ammunition clip with 10 rounds in defendant's right-hand coat pocket. The defendant was handcuffed, put in the radio car and brought to the station house.

In granting defendant's motion to suppress the gun and the ammunition clip, Criminal Term held that (1) the quantum of information possessed by the police officer rose only to the level of reasonable suspicion and only justified a frisk of the defendant's person for the officer's protection and (2) the intrusion by

the police officer into defendant's shopping bag constituted a search which was constitutionally infirm in view of the absence of probable cause.

We disagree with the reasoning and holding of Criminal Term.

It is beyond dispute that the detailed description of a man with a gun, received by the police officer from the woman pedestrian, rose to the level of reasonable suspicion and gave the police officer the right to frisk the defendant's person for weapons, in order to protect himself, even without any preliminary inquiry (*People v Green*, 35 NY2d 193; *People v McLaurin*, 43 NY2d 902; *Terry v Ohio*, 392 US 1; cf. *Adams v Williams*, 407 US 143).

Although the police officer did not exercise this right, he took an equally proper precautionary measure for his own safety when he lifted, opened and essentially "frisked" the shopping bag which was in defendant's possession at all times and which could have easily contained a gun (*People v Moore*, 32 NY2d 67; *People v Lambert*, 84 AD2d 849; *People v De Jesus*, 92 AD2d 521; *Commonwealth v Anderson*, 366 Mass 394). Upon the subsequent discovery of a vinyl carrying case which was "designed to carry a revolver", the officer acted reasonably in opening the case and seizing the gun (*People v Moore, supra; People v De Jesus, supra; Michigan v Long*, 463 US 1032, 103 S Ct 3469; *United States v McClinnhan*, 660 F2d 500). In this regard, we reiterate the admonition of the Court of Appeals in *People v Chestnut* (51 NY2d 14, 23): "Courts simply must not, in this difficult area of street encounters between private citizens and law enforcement officers, attempt to dissect each individual act by the policemen; rather the events must be viewed and considered as a whole, remembering that reasonableness is the key principle when undertaking the task of balancing the competing interests presented."

Once having properly seized the gun, the police officer had probable cause to search defendant's person and seize the ammunition clip.

Accordingly, the order granting defendant's motion to suppress must be reversed and defendant's motion to suppress must be denied. Titone, J. P., Mangano and Thompson, JJ., concur.

Boyers, J., dissents and votes to affirm the order, with the following memorandum, with which O'Connor, J., concurs. The uncontradicted evidence presented at the suppression hearing, related here as follows, clearly indicated that there was not sufficient probable cause to justify the search of defendant's shopping bag and the seizure of its contents. A police officer on

radio motor patrol overheard a bulletin which was intended for a different patrol car. It reported that a man near a luncheonette had a gun. Having unilaterally decided to respond as a back-up unit, the officer arrived on the scene to find several other policemen engaged in a conversation with a solitary, unknown civilian informant, described merely as a "white female [with] grey hair". He overheard the woman state that a tall man carrying a shopping bag was walking down Metropolitan Avenue, and that he had a gun. The officer turned around and spotted an individual with a shopping bag walking in the direction indicated and asked the woman if that was the man. The woman replied "yes". It was never determined whether this grey-haired woman was the source of the information provided in the radio bulletin. Neither was any attempt made to ascertain whether the basis of this unidentified informer's knowledge was from personal observation rather than repetitive hearsay. Without more, the officer returned to his partner in the radio car and they proceeded to follow the individual whom the officer pointed out to the informer.

They pulled up next to the man and the officer got out, drew his revolver, and told the man to "turn around, it is the police". The man complied, put down his shopping bag, and raised his hands. The officer lifted the shopping bag and from the weight of the bag, thought it might contain a gun. He then opened the shopping bag, saw a black vinyl zipper carrying case, opened the case, and found an unloaded .22 caliber automatic rifle. A subsequent search of the individual revealed a loaded ammunition clip. The man was arrested and charged with criminal possession of a weapon in the third degree.

At the suppression hearing, the only witness to testify was the arresting officer. His partner, who allegedly observed the entire incident, was not produced, nor were any of the officers who were speaking with the unknown informant. Following the hearing, it was held that there was not sufficient probable cause for the search of the closed container within the shopping bag, and the gun and ammunition clip were suppressed. The decision should be affirmed.

The information which the officer received from the informant was not sufficiently reliable, without more, to amount to probable cause for the arrest of defendant or the search of his bag. The officer had not established any independent corroboration of the woman's information concerning criminal activity (see *People v Odom,* 50 AD2d 936). Neither was this a situation in which the informant claimed to be a victim of the crime which she had reported (*People v Johnson,* 59 NY2d 1014; *People v Crespo,* 70

AD2d 661; *People v Hyter,* 61 AD2d 990). Under proper circumstances, the presence of either of these factors might justify a significant police intrusion into a defendant's privacy. However, not only were neither of these factors present here, but the officer even failed to determine if the informant's statements were the product of personal observation.

An officer who has an independent basis upon which to arrest a defendant may conduct a warrantless search of the individual's effects if necessary for the protection of the officer (*People v Gokey,* 60 NY2d 309; *People v Smith,* 59 NY2d 454). However, absent cause for a valid arrest in the first instance, the search of one's personal belongings is not lawful (*People v Cox,* 61 NY2d 1020). The extent of the police action sought to be justified must be examined in light of the circumstances which existed at the time that action was taken (*People v Benjamin,* 51 NY2d 267, 270). When evaluating the circumstances, we are constantly aware of the need to allow police officers to provide adequate protection for society. We also recognize the inherent danger of failing to permit an officer to insure his own safety so that he may pursue his investigation without unnecessary fear of harm. The balancing of these factors together with an individual's right of privacy is not easy. But we must never permit these admittedly important concerns to completely vitiate all of the rights which the Fourth Amendment provides to each individual. This is especially true when an alternative exists which balances respect for both interests, and which adequately provides for the safety of the officer in a manner that can be deemed reasonable. The courts have long recognized escalating levels of permissible police conduct. An officer, duty bound to investigate a report of criminal activity, may stop and detain a suspect, and he may frisk him if there is a reasonable basis upon which to believe that the suspect may be armed (*People v Stewart,* 41 NY2d 65; *People v McLaurin,* 43 NY2d 902; *People v Pacifico,* 95 AD2d 215). A further investigation, performed in safety, might substantiate the initial information, and subsequently lead to probable cause to believe that criminal activity is afoot.

Apparently in agreement that the search of the closed container within the shopping bag could not be justified upon the basis of probable cause, the majority has decided to equate the actions of the police officer to that of a "frisk". I must respectfully disagree with this analogy. The word "frisk" generally connotes an external patdown of an individual or an object through which the outline of a weapon may be detected (*People v Rivera,* 14 NY2d 441, 446). It does not encompass the opening and exploration of a closed container, made in an attempt to

uncover evidence. Such action involves more than a patdown, and requires probable cause before it may be lawfully effected (cf. *People v Belk,* 100 AD2d 908).

I am of the opinion that the proper response for the officer, based upon the information which he possessed, was to perform a protective patdown frisk of defendant so that he could pursue his investigation in relative safety. Considering both the lack of any corroborating evidence of criminal activity, together with the unknown basis of the informant's accusation, I am not prepared to condone any greater intrusion. Therefore, the decision to suppress the evidence should be affirmed.